

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### Overview of the Defendant's Criminal Offenses

Beginning in 2016, and continuing until in or about October 2024, within the District of Maryland and elsewhere, the defendant Tammy Barcus ("Barcus" or "Defendant"), did knowingly and willfully devise and intend to devise a scheme and artifice to defraud her employer, and to obtain money by means of issuing herself payments from her employer and concealing those payments by falsely recording within the business records of the employer that these payments were made to actual vendors of the employer, when in fact she deposited these payments into a bank account that she controlled and used the funds for her own financial benefit.

She accomplished this scheme and artifice to defraud by forging the signature of an owner, D.G., of the employer on the fraudulently authorized checks, thereby using a means of identification of another real person in furtherance of her fraud.

Finally, from at least 2016 through 2024, Tammy Barcus failed to file tax returns, Forms 1040, with the IRS, and concealed significant income in connection with the above scheme and artifice to defraud and evade at least $562,883 of taxes due and owing to the Internal Revenue Service ("IRS").

### Background

Tammy Barcus was a resident of Maryland. Resort Homes LLC ("Resort Homes") was a residential home building business located in Ocean City, Maryland. Resort Homes was owned by D.G. and C.D. From about 2005 through October 2024, Barcus was an employee of Resort Homes.

Barcus' spouse, Ronald Barcus operated a residential tile contracting business doing business as Shoreline Tile And Marble ("Shoreline"). Shoreline provided tile installation services for Resort Homes as a contractor.

### Barcus' Position of Trust with Resort Homes

Barcus was hired by Resort Homes in and around 2005. Barcus worked for Resort Homes as a trusted employee with substantial control over Resort Homes business records and financial accounts. Overtime, Resort Homes and its owners entrusted Barcus with access and control over its financial information, records, and control over financial transactions performed

Rev. August 2018

on behalf of the business. From at least 2016 until her employment for the company was terminated in October 2024, Barcus served as Resort Homes' office manager and bookkeeper. As the office manager and bookkeeper, Barcus was responsible for – among other things – accounts receivable, accounts payable, paying invoices, and maintaining the books and records of Resort Homes. Barcus, as a part of her daily job duties had access to payment systems and accounting records belonging to Resort Homes and worked with a high degree of independence and with limited oversight by the owners of Resort Homes. Barcus was responsible for preparing Resort Homes' checks for review and signature by the owners, D.G. and C.D., to issue payments to Resort Homes' suppliers, vendors, and contractors. Barcus also could authorize checks on behalf of Resort Homes', but only when the owners were unavailable to endorse the check and with the specific permission of owners. In these limited instances, Barcus endorsed the checks using her own signature.

### The Embezzlement Scheme and The Interstate Wires

Resort Homes maintained business bank accounts with Bank of Ocean City, including a business bank account ending in x8282 (Resort Homes' BOC Account x8282). Bank of Ocean City utilizes servers located in the State of Georgia to process and store customer data. All transactions affecting customer accounts are electronically processed through those servers. Resort 's owners, D.G. and C.D., and Barcus held signature authority over Resort Homes' BOC Account x8282.

From 2016 through 2024, defendant Barcus used her position of trust with Resort Homes to embezzle **at least $1,790,000** from Resort Homes by issuing more than five hundred (500) fraudulently authorized checks from Resort Home's business bank account payable to Shoreline that Tammy Barcus then used for personal purposes.

These fraudulently authorized checks were separate from Resort Homes' payments to Shoreline for work performed for the business as a contractor. Barcus forged the signature of D.G. on the face of the Resort Homes' business checks and deposited these checks into bank accounts she controlled. The fraudulently authorized checks, by year, are summarized below in a table:

| Year | Number of Fraudulently Authorized Checks | Total Amount |
|---|---|---|
| 2016 | 43 | $88,506.43 |
| 2017 | 75 | $130,460.13 |
| 2018 | 68 | $153,181.45 |
| 2019 | 61 | $192,428.45 |
| 2020 | 55 | $169,271.75 |
| 2021 | 54 | $228,080.28 |
| 2022 | 55 | $238,303.05 |
| 2023 | 68 | $322,212.33 |
| 2024 | 54 | $271,225.00 |
|  | 533 | $1,793,668.87 |

By comparison, the table below summarizes legitimate payments made to Shoreline/Ronald Barcus for services actually performed. These payments were supported by corresponding invoices submitted to Resort Homes.

| Year | Number of Legitimate Checks for Services Rendered | Total Amount |
|---|---|---|
| 2016 | 38 | $63,051.25 |
| 2017 | 37 | $54,664.58 |
| 2018 | 32 | $42,974.54 |
| 2019 | 31 | $50,539.72 |
| 2020 | 46 | $82,977.29 |
| 2021 | 44 | $82,830.15 |
| 2022 | 47 | $89,922.14 |
| 2023 | 37 | $74,134.26 |
| 2024 | 27 | $58,729.66 |
|  | 339 | $599,823.59 |

Rev. August 2018

15

### Tammy Barcus' Scheme to Defraud Using Forged Signatures and False Accounting Entries

Using her authority as Resort Homes' bookkeeper and office manager, Barcus sent and caused to be sent by interstate wire communications, beginning in Maryland, funds taken pursuant to checks that were drawn on Resort Homes' bank accounts. Tammy Barcus deposited the funds into a PNC Bank N.A. business bank held in the name of Shoreline, Shoreline PNC Account x5216. Tammy Barcus and her spouse, Ronald Barcus controlled this account. These funds were deposited under materially false and fraudulent pretenses and had no legitimate business purpose. The Defendant used the name of D.G. and forged the signature of D.G. to endorse fraudulently authorized checks for Resort Homes that were made payable to Shoreline.

To conceal her scheme to defraud from Resort Homes' owners, and to conceal her income from the embezzlement from the Internal Revenue Service (IRS), the Defendant made materially false and fraudulent edits and entries into Resort Homes's internal accounting records to conceal the existence of the fraudulent payments to Shoreline. By using the trust and authority Resort Homes' owners provided to Barcus as bookkeeper and office manager, Barcus concealed within the company records, including in QuickBooks, the fraudulently authorized checks, completed by Barcus, and made materially false and fraudulent representations as to the recipients of those funds. Specifically, the Defendant listed suppliers for Resort Homes, such as Sussex Lumber, Beacon Building, Atlantic Concrete Company, and others, not Shoreline or Barcus, as the recipients and provided false justifications for their purpose. In fact, Barcus issued the checks payable to Shoreline or to the Defendant, herself individually, and deposited these funds into bank accounts Barcus controlled – including Shoreline PNC Account x5216. The false entries into Resort Homes' accounting records were entered by Barcus at Resort Homes' office location in Ocean City, Maryland.

Barcus caused interstate wire communications when making deposits with the PNC Bank Branch located in West Ocean City, and other locations, of the fraudulently authorized Resort Homes' checks into the Shoreline PNC Account x5216. PNC Bank captured some of this deposit activity by the Defendant on surveillance video. The checks from Resort Homes' BOC Account x8282 were drawn against Bank of Ocean City, which operated data centers outside the State of Maryland, in the State of Georgia. Each fraudulently authorized check caused an interstate wire between Shoreline PNC Account x5216 and Resort Homes' BOC Account x8282.

Using her authority as Resort Homes' office manager and bookkeeper, Barcus issued at least 500 fraudulently authorized payments from Resort Home's accounts into bank accounts Barcus controlled. These payments had no legitimate business purpose. Through these efforts, between 2016 and 2024, defendant Barcus used her position of trust with Resort Homes to issue fraudulently authorized checks from Resort Homes' accounts of at least $1,793,668.87.

### Certain PNC Deposit Activity in 2024 Captured by PNC Surveillance Systems

Specific examples of deposit activity captured by PNC Surveillance and obtained the Government show the Defendant depositing Resort Homes' checks fraudulently authorized and issued to Shoreline that contain D.G.'s name and forged signature:

| Approximate Date | Transfer, Possession, and Use of Identification |
| --- | --- |
| July 31, 2024 | Barcus used the identity of D.G., including name and forged signature, to authorize payment of check # 4313 and presented check for payment at PNC Bank located at branch location in or near West Ocean City, Maryland |
| September 16, 2024 | Barcus used the identity of D.G., including name and forged signature, to authorize payment of check # 4498 and presented check for payment at PNC Bank located at branch location in or near West Ocean City, Maryland |
| September 23, 2024 | Barcus used the identity of D.G., including name and forged signature, to authorize payment of check # 4521 and presented check for payment at PNC Bank located at branch location in or near West Ocean City, Maryland |

### Resort Homes' Discovery of the Fraud and BARCUS' Admissions of Guilt

In October 2024, while Barcus was on vacation and absent from Resort Homes' offices, the owners of the business noticed irregular or unusual payments to Shoreline that were not supported with any invoices. Resort Homes' owners initiated an internal review led by an accountant hired to perform an in-depth inquiry. The accountant reviewed accounting entries, invoices, and payments relating to Shoreline. The accountant compiled business records showing Barcus perpetrated an embezzlement scheme from 2016 through October 2024.

On or about October 25, 2024, the owners of Resort Homes met with the Defendant at Resort Homes' office in Maryland. During the late-October meeting, the owners showed the Defendant documents detailing disbursements issued to Shoreline that were not supported by invoices of work performed by Shoreline and that were recorded as paid to other businesses in Resort Homes' account records, including in QuickBooks.

A portion of this late-October meeting was recorded by a Maryland State Trooper's body worn camera. During the meeting, the Defendant responded to the owners of Resort Homes by acknowledging her conduct and admitting that she took funds from Resort Homes. At the time, Barcus made admissions, including "This is all on me."

## Barcus' Tax Evasion

IRS records show that the Defendant failed to file tax returns for the years 2016 through 2023. The following tables show the items of unreported income and the resulting tax loss:

| Tax Information | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Income from Embezzlement | $88,506 | $130,460 | $153,181 | $192,428 |
| Resort Homes Wages (W-2 Wages) | $48,252 | $49,542 | $46,964 | $44,137 |
| Tax Loss (after withholdings) | $35,450 | $53,599 | $53,730 | $68,096 |

| Tax Information | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| Income from Embezzlement | $169,272 | $228,080 | $238,303 | $322,212 |
| Resort Homes Wages (W-2 Wages) | $48,495 | $49,541 | $47,803 | $46,184 |
| 401K Distribution | -- | -- | $10,000 | $8,000 |
| Tax Loss (after withholdings) | $60,618 | $83,098 | $89,607 | $118,685 |

The total tax loss is at least $562,883.

Barcus committed affirmative acts of evasion to conceal the above income from the IRS by purposely characterizing the fraud payments as expenses paid to suppliers of Resort Homes to avoid Forms 1099 reporting of the payments to the IRS, by commingling the embezzled funds with legitimate income deposited into the business bank account for Shoreline, and by making personal expenditures directly from the Shoreline business bank account. Those personal expenditures included credit card payments, vehicle loan payments, and mortgage payments. The following table shows the mortgage payments made directly from the Shoreline business bank account by year since 2019:

| Year | Amount of Mortgage Payments Made Directly from Shoreline Account |
|---|---|
| 2019 | $18,377 |
| 2020 | $32,193 |
| 2021 | $35,165 |
| 2022 | $29,732 |
| 2023 | $32,565 |
| 2024 | $27,923 |
| Total | $175,955 |

Rev. August 2018

SO STIPULATED:

        Kelly O. Hayes
        United States Attorney

        JARED MURPHY (Affiliate)  *Digitally signed by JARED MURPHY (Affiliate)*
        *Date: 2025.08.04 10:53:44 -04'00'*
        _____
        Jared W. Murphy
        Special Assistant United States Attorney
        Bar #29178

    I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

8-14-2025
_____
Date

        *Tammy Barcus*
        _____
        Tammy Barcus
        Defendant

    I am Tammy Barcus' attorney. I have carefully reviewed every part of this Statement of Facts with her. To my knowledge, her decision to sign it is an informed and voluntary one.

8/14/25
_____
Date

        _____
        Steven Rakow
        Counsel for Tammy Barcus

Rev. August 2018