THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Criminal No. MJM-25-266 |
| TAMMY BARCUS, | : |
| Defendant. | : |

ooooOoooo

# GOVERNMENT SENTENCING MEMORANDUM

The United States of America, by and through Kelly O. Hayes, United States Attorney for the District of Maryland, and its undersigned counsel, moves this Court to sentence Defendant Tammy Barcus ("Barcus" or "Defendant") to a total period of incarceration of 57 months in the Bureau of Prisons ("BOP"),[1] supervised release of three years, total restitution of $2,356,551.87,[2] and a $300 special assessment.

## The Defendant's Crimes

This case is about the Defendant's abuse of a trust built during her time working for Home Builder 1 that she systematically betrayed. Barcus worked for Home Builder 1 from 2005 until her conduct was discovered in October 2024. As office manager and bookkeeper, she was entrusted with the company's financial records, check issuance, vendor payments, and accounting systems. She was an insider entrusted with safeguarding the company's finances. She exploited that trust for her own gain.

For over eight years, from the beginning of 2016 and continuing until in or about October 2024, Barcus engaged in a scheme to swindle more than $1.7 million from her employer, Home

---

[1] The government requests that the Court impose a sentence of 33 months' incarceration on Counts One and Three, and 24 months' imprisonment, consecutive, for Count Two.
[2] The government's full restitution calculation is set forth in Exhibit 1.

1

Builder 1. This embezzlement and identity theft scheme was significantly enabled through her trusted position with her employer. ECF 12-1 at 1. She then compounded those crimes by evading taxes on the fraudulently obtained funds for tax years 2016, 2017, 2018, 2019, 2020, 2021, 2022, and 2023. *See id*. Her actions caused significant financial damage to her employer and resulted in losses to the United States of more than $550,000.

Barcus worked for Home Builder 1 as an office manager and bookkeeper until her illegal conduct came to light in October 2024. ECF 12-1 at 1-2. During the eight years of her fraud, Barcus caused the issuance of more than five hundred (500) fraudulently authorized checks from Home Builder 1's business bank account. The checks were payable to TMB, a business that performed legitimate work for Home Builder 1. *See id*. However, the checks that Barcus fraudulently issued were not based on actual work performed by TMB.

For her scheme to succeed, Barcus had to steal the identity of her boss, D.G., and fraudulently sign the checks to TMB using the name of D.G. ECF 12-1 at 4. Barcus then concealed the payments to TMB by falsely recording them in Home Builder 1's QuickBooks and other records. She recorded the payments as expenses paid to different, but actual vendors, of Home Builder 1. *See id*. Barcus also used her signature authority and access to the bank account of TMB to access the fraudulently obtained funds. *See id*. Overall, she preyed on the trust that her bosses and co-workers had placed in her, and took their hard-earned funds.

Barcus used the stolen and tax-free funds for "personal expenditures[,] include[ing] credit card payments, vehicle loan payments, and mortgage payments." ECF 12-1 at 6. Barcus was able to use this scheme to make payments of more than $175,000 on the loan for her primary residence. *See id*. In 2020, Tammy Barcus and her spouse purchased a 2019 Dodge Ram 4WD Mega Cab Truck for $90,707. For the Dodge Ram 4WD, Tammy Barcus made a down payment of $12,000 and locked in monthly payments for the Dodge Ram Mega Cab of $1,042 per month

for 84 months. In 2021, Tammy Barcus and her spouse purchased a Chevrolet Suburban Z71 for approximately $82,120. For the Suburban she made a down payment of $10,049 and locked in monthly payments of $1,020 per month for 84 months. In 2022, Tammy Barcus and her spouse purchased a Sea Chaser center console fishing and pleasure boat, pictured below, with a 350HP Suzuki outboard motor and accompanying trailer, for $106,206. Tammy Barcus made a down payment of $15,000 and locked in monthly payments for the Sea Chaser of $726.08 per month for 240 months.



The purchase of these two vehicles and the boat totaled approximately $279,000. Down payments totaled approximately $37,049, and ongoing monthly payments were $2,788. These purchases were not one-time indulgences. These financial obligations coincided with and were sustained by the continuation of her fraudulent scheme. Simply put, her lifestyle depended on continued deception.

To facilitate concealing the large amounts she was taking from her employer, she had to issue herself a significant number of checks to keep the individual amount of any particular check below an amount that would raise immediate suspicion. The following table shows the repetition of her abuse of trust through the number of fraudulent checks and total amount embezzled by year, ECF 12-1 at 3:

| Year | Number of Fraudulently Authorized Checks | Total Amount |
|---|---|---|
| 2016 | 43 | $88,506.43 |
| 2017 | 75 | $130,460.13 |
| 2018 | 68 | $153,181.45 |
| 2019 | 61 | $192,428.45 |
| 2020 | 55 | $169,271.75 |
| 2021 | 54 | $228,080.28 |
| 2022 | 55 | $238,303.05 |
| 2023 | 68 | $322,212.33 |
| 2024 | 54 | $271,225.00 |
|  | **533** | **$1,793,668.87** |

Barcus' deception was multi-layered. Throughout this scheme, the Defendant also evaded and concealed taxable income from the IRS by making false entries in the accounting and QuickBooks records of Home Builder 1. This was not an independent part of the fraud, but rather an extension of it. By misrepresenting the embezzled funds as payments to vendors, Barcus prevented her employer from properly reporting the disbursements to TMB/Barcus and issuing Forms 1099, and precluded the IRS from uncovering the tax evasion.

Barcus did not stop committing the fraud voluntarily. In October 2024, while Barcus was on vacation and absent from the office, the irregularities were discovered in Home Builder 1's financial records. An internal review led to the uncovering of the embezzlement scheme spanning eight years. When confronted on October 25, 2024, Barcus admitted the conduct, stating: "This is all on me." ECF 12-1 at 5. Notably, the owners of Home Builder 1 did not respond with visible anger during this face-to-face meeting. Video showed that they appear to respond with sorrow and deep disappointment. That reaction underscores the level of trust the victims placed in Barcus for nearly twenty years, a trust she violated hundreds of times.

**Procedural History**

On or about August 14, 2025, Barcus and the United States entered into a written plea agreement pursuant to which the Defendant admitted that she had committed multiple federal crimes, including wire fraud, aggravated identity theft, and tax evasion, in violation of 18 U.S.C. §§ 1343, 1028A, and 26 U.S.C. § 7201. On or about September 29, 2025, Barcus pled guilty to a three-count information during a hearing before this Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

The advisory guidelines calculation contemplated in the written plea agreement accords with the calculation in the Presentence Report ("PSR") prepared by U.S. Probation. The PSR calculated a base offense level of seven (7) for Counts One and Three, in accordance with U.S.S.G. § 2B1.1, which is increased by sixteen (16) levels based on the loss amount of more than $1.5 million. PSR, ¶ 41. The PSR increased the offense level by two (2) levels based on an abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3, and decreased the offense level by five (5) levels based on acceptance of responsibility and the Defendant's lack of criminal history, pursuant to U.S.S.G. §§ 3E1.1, 4C1.1. As a result, the final adjusted offense level for Counts One and Three is Twenty (20), with an advisory range of 33 to 41 months' incarceration based on the Defendant being in Criminal History Category I.

The plea agreement and the PSR further agreed that the required sentence for Count Two, involving aggravated identity theft, is a two-year period of incarceration, consecutive to all other periods of incarceration. PSR, ¶ 49. This results in a total advisory sentencing range of 57 to 65 months imprisonment. PSR, ¶ 80. The probation officer did not identify any factors that would warrant a departure from the applicable Guideline range. PSR, ¶ 95.

## The 3553(a) Sentencing Analysis

As this Court is well aware, it must impose a reasonable sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, based on multiple factors, including "the nature and circumstances of the offense," "the history and characteristics of the Defendant," the need "to promote respect for the law," the need for just punishment without unwarranted sentencing disparities and the need for general deterrence. 18 U.S.C. § 3553(a). The Government submits that a sentence of 57 months incarceration, the low end of the Guidelines range in this case, would constitute a reasonable sentence pursuant to 18 U.S.C. § 3553(a), and the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 51 (2007).

   **A. 18 U.S.C. § 3553(a)(1) - the nature and circumstances of the offense and the history and characteristics of the defendant.**

Barcus's embezzlement, identity theft, and tax offenses demonstrate that the nature and circumstances of her offenses were very egregious and warrant a lengthy period of incarceration. Barcus caused significant harm to Home Builder 1 and its owners in this case. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.G. suffered the additional harm of having his identity repeatedly misused. In this case, even if Defendant was able to repay the victim, her conduct has harmed Home Builder 1 in more ways than purely economic harm. The company's reputation and goodwill in the local community have been impacted by the theft. Its name is now associated with this internal fraud in addition to other aspects of its work and service.

The government recognizes that this is Barcus's first time in the criminal justice system, and that there are other personal characteristics and history that this Court will need to consider at sentencing, but her crimes were very significant and occurred over a very extended period of time. The government also acknowledges that the defendant accepted responsibility for her conduct and admitted her wrongdoing when confronted, stating, "This is all on me." Her Guidelines range fully accounts for her lack of criminal history and timely acceptance of responsibility, and a sentence at the low end of that range properly balances her post-detection acknowledgment of guilt against the extensive and deliberate criminal conduct that preceded it.

### B. 18 U.S.C. § 3553(a)(2)(A) – the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

This case is defined by an abuse of trust layered upon deception that included forged signatures, falsified records, concealed income, and sustained theft. This was not an isolated incident. Barcus' crimes required continuously deceiving Home Builder 1. Indeed, the full scope of the scheme was years in the making. Although the charged conduct began in 2016, it was enabled by the trust she developed over nearly two decades and the longstanding trust and reliance Home Builder 1 placed in her for all aspects of its financial operations. Barcus' embezzlement was committed over a lengthy period of time and was sustained through constant and consistent acts of calculated concealment. The scheme required hundreds of discrete acts, including at least 533 fraudulent checks and corresponding falsified accounting entries. The loss amounts also increased over time, with 2023 reflecting the highest annual total.

The stolen funds were not used for subsistence or emergency expenses. Barcus spared no expense on her own lifestyle, spending thousands per month on a large new SUV, a new 4WD truck, a $100,000-plus fishing and pleasure boat, and frequent high-dollar dinners. Ultimately, the motivating factor behind the defendant's crimes was not desperation but rather greed. Barcus betrayed Home Builder 1's trust, causing the business and its owners financial,

reputational, and emotional harm. The victims have suffered, and will continue to suffer, harm from the Defendant's conduct.

Barcus did not only steal from her employer. She also evaded federal income taxes on the fraud proceeds for tax years 2016 through 2023, causing tax losses exceeding $550,000. By cleverly mischaracterizing the fraudulent payments in the company's books as payments for supplies expenses to legitimate vendors, she prevented the issuance of Forms 1099 and concealed her income from the IRS. As a result, she stole from her employer and then leveraged that abuse of trust to further defraud the United States. This kind of betrayal and greed calls for a significant term of imprisonment within the Guidelines range.

### C. 18 U.S.C. § 3553(a)(2)(B) - the need to deter similar criminal conduct

General deterrence is a critical component in this matter. Embezzlement by trusted insiders is uniquely difficult to detect and damaging to small businesses. A sentence within the advisory Guidelines range is necessary to deter others in positions of financial trust from believing that such conduct will result in minimal consequences.

## Restitution

Pursuant to 18 U.S.C. § 3663(a)(3) and the Plea Agreement, the Court should order restitution to Home Builder 1 of $1,793,668.87 and restitution to the IRS in the amount of $562,883. The Court should also order that the restitution be due "in full immediately".

As to the "in full immediately" order, Congress has expressed a preference through statute that restitution be payable immediately. *See* 18 U.S.C. § 3572(d)(1). This statutory preference is consistent with the Crime Victims' Rights Act mandate that victims receive "full and *timely* restitution as provided in law." 18 U.S.C. § 3771(a)(6) (emphasis added). Restitution orders that are payable in full immediately allow the government to use its full array of tools to ensure that victims receive timely restitution. Such orders also do not unfairly harm the defendant because

oppressive collection tactics are prohibited by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* Lastly, the "in full immediately" order allows the Bureau of Prisons to collect restitution through the Inmate Financial Responsibility Program ("IFRP"). Consistent with the plea agreement, we respectfully request that the Court order restitution payable in full immediately, and on a monthly schedule of $500 per month during the period of supervised release.

The PSR states that Barcus does not have the ability to pay a fine. The PSR shows that Barcus' liabilities, which include a civil judgment relating to her defrauding of Home Builder 1, are greater than her assets. The Government is not requesting a fine in this case to allow the defendant to use her resources on the restitution owed to Home Builder 1.

## CONCLUSION

For these reasons, the government respectfully recommends that the Court sentence Barcus to 57 months of incarceration, followed by three years of supervised release, a mandatory special assessment of $300, restitution to the IRS of $562,883, and restitution to Home Builder 1 of $1,793,668.87.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

    /s/
Jared W. Murphy, No. 29178
Harry M. Gruber
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201-2692
(410) 209-4992
jared.murphy@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing Government's filing was served via email on the Defendant's counsel.

                _____/s/_____
                Jared W. Murphy
                Assistant United States Attorney